# Exhibit C

# SEPARATION AGREEMENT

This Separation Agreement (this "Agreement") is made and entered into as of September 20, 2023, by and between Chris Grassi ("Executive") and Keeco, LLC (the "Company"). The Company and Executive are sometimes collectively referred to herein as the "Parties" and individually as a "Party".

**1.    Separation.** Pursuant to the Letter of Resignation attached as Exhibit A to this Agreement, Executive shall resign from any and all officer and director positions with the Company and its affiliates as of August 29, 2023 (the "Separation Date"), other than as a member of the Board of Directors of Keeco, Inc. As used in this Agreement, the term "affiliate" shall mean any entity directly or indirectly controlled by, controlling, or under common control with, the Company.

**2.    Payments and Benefits.**

(a)    Accrued Benefits. All Company-provided benefits ceased to accrue as of the Separation Date. Executive shall be provided the earned payments and benefits set forth as the "Earned Benefits" in Exhibit B hereto.

(b)    Separation Benefits. In consideration of, and subject to and conditioned upon Executive's execution and non-revocation of the General Release of Claims attached as Exhibit C to this Agreement (the "Release") within 60 calendar days following the Separation Date, and the effectiveness of such Release as provided in Section 3 of this Agreement, the Company shall pay or provide to Executive the special severance payments and benefits contemplated by Section 4(b) of the Employment Agreement between Executive and the Company dated as of September 19, 2022 (the "Employment Agreement") to which Executive is entitled upon a termination without cause (and as set forth as "Severance Payments" on Exhibit B hereto), in each case upon the terms, and subject to the conditions, of the Employment Agreement and as summarized in Exhibit B.

(c)    Full Payment. Executive acknowledges that the payments and arrangements contained in this Agreement (including the Earned Benefits as summarized in Exhibit B) shall constitute full and complete satisfaction of any and all amounts properly due and owing to Executive as a result of his employment with the Company and its affiliates and his termination therefrom, including, without limitation, any and all amounts properly due and owing to Executive under the Employment Agreement.

**3.    Release of Claims.** Executive agrees that, as a condition to Executive's right to receive the payments and benefits set forth in Section 2(b) of this Agreement, within 60 calendar days following the Separation Date (the "Release Period"), Executive shall execute and deliver the Release to the Company. If Executive fails to execute and deliver the Release to the Company during the Release Period, or if the Release is revoked by Executive or otherwise does not become effective and irrevocable in accordance with its terms, then Executive will receive only the Earned Benefits and will not be entitled to any other payment or benefit under Section 2(b) of this Agreement.

4. **Effect on Employment Agreement**.

(a) <u>Restrictive Covenants</u>. Executive specifically acknowledges and agrees that, in accordance with Section 9(m) of the Employment Agreement, he remains obligated to comply with all provisions of the Employment Agreement (except Sections 1, 2 and 3 thereof), which provisions shall continue to apply, in accordance with their terms, on and after the Separation Date, notwithstanding Executive's termination of employment and release of claims. These continuing provisions include, but are not limited to, Section 4(b)(x) and (y), Section 5 (Confidential Information), Section 6 (Non-Competition; Non-Solicitation; Non-Disparagement), Section 9(g) (Remedies) and Section 9(j) (Executive's Cooperation) of the Employment Agreement.

(b) <u>Notice Provisions</u>. Executive acknowledges and agrees that this Agreement satisfies any obligation of the Company to provide written notice to Executive regarding termination of his employment pursuant to the Employment Agreement and that Executive hereby waives the 30-day notice requirement of Section 4(a) of the Employment Agreement.

(c) <u>Stock Options</u>. Executive hereby acknowledges and agrees that his right, if any, to receive a stock option grant under Section 3(c) of the Employment Agreement automatically is forfeited, terminated and cancelled as of the Separation Date without payment of any consideration by the Company or any of its affiliates and Executive shall have no further rights thereunder.

(d) <u>Loan</u>. The Parties acknowledge and agree that the loan described in Section 3(d) of the Employment Agreement was never granted, because the lenders did not provide the requisite consent as required thereunder. Therefore, all rights and obligations of the Parties under Section 3(d) of the Employment Agreement shall immediately cease as of the Separation Date without payment of any consideration and Executive shall have no further rights thereunder.

5. **Miscellaneous**.

(a) <u>Withholding</u>. The Company or its affiliates, as applicable, may withhold from any amounts payable or benefits provided under this Agreement such federal, state, local, foreign or other taxes as will be required to be withheld pursuant to any applicable law or regulation (or require Executive to make arrangements satisfactory to the Company for the payment of such required withholding taxes).

(b) <u>Successors</u>. This Agreement is personal to Executive and without the prior written consent of the Company will not be assignable by Executive other than by will or the laws of descent and distribution. This Agreement will inure to the benefit of and be enforceable by Executive's surviving spouse, heirs and legal representatives. This Agreement will inure to the benefit of and be binding upon the Company and its affiliates, and their respective successors and assigns.

(c) <u>Final and Entire Agreement; Amendment</u>. Except with respect to the provisions of the other documents referenced herein, this Agreement, together with the Exhibits and the other documents referenced herein, represents the final and entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements, negotiations

and discussions between the Parties hereto and/or their respective counsel with respect to the subject matter hereof. Executive has not relied upon any representations, promises or agreements of any kind except those set forth herein in signing this Agreement. Any amendment to this Agreement must be in writing, signed by duly authorized representatives of the Parties, and stating the intent of the Parties to amend this Agreement.

(d) <u>Governing Law; Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to conflict of laws principles. Any action or proceeding by either of the Parties to enforce this Agreement shall be brought only in a state or federal court located in New York City, New York. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

(e) <u>Notices</u>. All notices and other communications hereunder will be in writing and will be given by hand delivery or via e-mail to the other Party or by registered or certified mail, return receipt requested, postage prepaid, or by overnight courier, addressed as follows: (i) if to Executive: at Executive's most recent address on the records of the Company; and (ii) if to the Company: Thompson Hine LLP, 3900 Key Center, 127 Public Square, Cleveland, Ohio 44114, Attn: Curtis Tuggle (Curtis.Tuggle@ThompsonHine.com); or to such other address as either Party will have furnished to the other in writing in accordance herewith. Notice and communications will be effective on the date of delivery if delivered by hand or e-mail, on the first business day following the date of dispatch if delivered utilizing overnight courier, or three business days after having been mailed, if sent by registered or certified mail.

(f) <u>Counterparts</u>. This Agreement may be executed in one or more counterparts (including by means of facsimile or other electronic transmission), each of which will be deemed an original, but all of which taken together will constitute one original instrument.

(*Signatures are on the following page*)

3

IN WITNESS WHEREOF, the Parties hereto have each executed this Agreement as of the date first above written.

**KEECO, LLC**

_____
By: Quinn Morgan
Its: Authorized Signatory


**EXECUTIVE**


_____
Chris Grassi

4

IN WITNESS WHEREOF, the Parties hereto have each executed this Agreement as of the date first above written.

### KEECO, LLC

_____
By: Quinn Morgan
Its: Authorized Signatory

### EXECUTIVE

DocuSigned by:

*Chris Grassi*
9540C2FE19AA4FD...
Chris Grassi

4

EXHIBIT A

Letter of Resignation

August 29, 2023

Keeco, LLC
c/o Centre Lane Partners, LLC
One Grand Central Place
60 East 42nd St., Suite 2220
New York, NY 10165

Attn: Quinn Morgan

    Effective as of August 29, 2023, I hereby resign (i) from any and all positions held by me as an officer, including as Chief Executive Officer, of Keeco, LLC (the "Company"), and (ii) from any and all positions held by me as an officer or director of any subsidiaries or affiliates of the Company. For the avoidance of doubt, I am not resigning as a member of the Board of Directors of Keeco, Inc.

                                               Sincerely,

                                               *Chris Grassi*
                                               Chris Grassi

**EXHIBIT B**
**SEPARATION PAYMENTS AND BENEFITS**
**UNDER THE EMPLOYMENT AGREEMENT**

| Description of Payment/Benefit | Payment Terms |
|---|---|
| Earned Benefits | <ul><li>The Company has issued Executive's final paycheck, which included all accrued but unpaid PTO.</li><li>The Company, within 45 calendar days after the Separation Date, shall reimburse Executive for any and all reasonable business expenses actually incurred by Executive in connection with the performance of his duties prior to the Separation Date in accordance with applicable Company policies, which expenses shall be submitted by Executive to the Company with supporting receipts and/or documentation no later than 30 calendar days after the Separation Date.</li><li>The Parties acknowledge that the payments and benefits described in this section shall be in full satisfaction of the Company's obligations to Executive under Section 4(f) of the Employment Agreement.</li></ul> |
| Severance Payments under Section 4(b) of the Employment Agreement | <ul><li>Provided that Executive timely executes and does not revoke both the Separation Agreement and the separate General Release of Claims attached as Exhibit C, the Company shall pay to Executive an aggregate gross amount equal to $1,354,166.67, which represents 12 months of his annual base salary, plus an additional one month of salary to reflect pay in lieu of the 30-day notice provision in Section 4(a) of the Employment Agreement (the "Severance Payment"), and such Severance Payment shall be payable in substantially equal and regular installments, less applicable taxes and deductions, in accordance with the Company's normal payroll practices, over the 12-month period commencing on the Separation Date (the "Severance Period") per the following terms: (i) the installments shall commence to be paid on the Company's first regularly scheduled payroll date that occurs after the Release is received by the Company and becomes effective and irrevocable in accordance with its terms (the "Severance Commencement Date"), (ii) the first installment shall include as a lump sum all Severance Payments (without interest) that accrued from the Separation Date until the Severance Commencement Date, and (iii) the remaining installments of Severance Payments shall be paid as otherwise scheduled for the Severance Period.</li></ul> |

| Description of Payment/Benefit | Payment Terms |
|---|---|
| | ▪ Executive shall remain eligible to earn the Pro-Rated Bonus for the 2023 fiscal year on the terms, and subject to the conditions, set forth in Section 4(b)(iii) of the Employment Agreement.<br><br>▪ Subject to Executive's timely election of continued health insurance coverage in accordance with COBRA, the Company will reimburse the entire cost of the COBRA premiums during the Severance Period.  Notwithstanding the foregoing, Executive acknowledges that any additional COBRA continuation of health benefits following the Severance Period shall be at Executive's sole expense.<br><br>▪ The Parties acknowledge that the payments and benefits described in the first three bullet points of this section shall be in full satisfaction of the Company's obligations to Executive under Section 4(b) of the Employment Agreement.  The Parties acknowledge and agree that no Prior Year Bonus (as defined in Section 4(b)(ii) of the Employment Agreement) is due or owed to Executive. |

**EXHIBIT C**
**GENERAL RELEASE OF CLAIMS**

This General Release of Claims (this "Release") is made and entered into as of this 20th day of September 2023, by and between Keeco, LLC (the "Company") and Chris Grassi ("Executive"). In consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and Executive, intending to be legally bound, hereto agree as follows:

1. **Employment Status**. Executive's employment with the Company and its affiliates terminated effective as of August 29, 2023 (the "Separation Date"). Executive and Company acknowledge and agree that, upon the effectiveness of this Release and the satisfaction of the Company's applicable obligations pursuant to the terms of the Separation Agreement (as defined below), Executive has been fully compensated for all wages for work performed on behalf of the Company through the Separation Date.

2. **Payments and Benefits**. Upon the effectiveness of the terms set forth herein, the Company shall provide Executive with the benefits set forth in Sections 4(b) of the Employment Agreement between Executive and the Company dated as of September 19, 2022 (the "Employment Agreement"), upon the terms, and subject to the conditions, of the Employment Agreement and as summarized in the Separation Agreement between Executive and the Company (the "Separation Agreement"). Notwithstanding the immediately preceding sentence, the Parties acknowledge and agree that Executive is not entitled to receive any Prior Year Bonus (as such term is defined in Section 4(b) of the Employment Agreement) but Executive shall remain eligible to receive a Pro Rata Bonus, if any (as such term is defined in and in accordance with the terms of Section 4(b)(iii) of the Employment Agreement). Executive further acknowledges and agrees that Executive is not entitled to receive any additional payments as wages, vacation or bonuses except as otherwise provided under Sections 4(b) of the Employment Agreement.

3. **No Liability**. This Release does not constitute an admission by the Company, or any of its parents, subsidiaries, affiliates, divisions, officers, directors, partners, agents, or employees, or by Executive, of any unlawful acts or of any violation of federal, state or local laws.

4. **Release**. In consideration of the payments and benefits set forth in Section 2 above, Executive for himself, his heirs, administrators, representatives, executors, successors and assigns does hereby irrevocably and unconditionally release, acquit and forever discharge the Company and each of its parents, subsidiaries, affiliates, divisions, successors, and assigns, and each of their respective officers, directors, partners, agents, attorneys, insurers, administrators, and former and current employees, including without limitation all persons acting by, through, under or in concert with any of them (collectively, "Releasees"), and each of them, from any and all claims, demands, actions, causes of action, costs, attorney fees, and all liability whatsoever, whether known or unknown, fixed or contingent, which Executive has, had, or may ever have against the Releasees relating to or arising out of Executive's employment or separation from employment with the Company, from the beginning of time and up to and including the date Executive executes this Release. This Release includes, without limitation, (i) law or equity claims; (ii) contract (express or implied) or tort claims; (iii) claims for wrongful discharge, retaliatory discharge, whistle blowing, libel, slander, defamation, unpaid compensation, intentional infliction of emotional

1

distress, fraud, public policy, contract or tort, and implied covenant of good faith and fair dealing; (iv) claims arising under any federal, state, or local laws, rules or regulations of any jurisdiction that prohibit age, sex, race, national origin, color, disability, religion, veteran, military status, sexual orientation, or any other form of discrimination, harassment, or retaliation (including without limitation under the Age Discrimination in Employment Act of 1967 as amended by the Older Workers Benefit Protection Act (the "ADEA"), the National Labor Relations Act, Executive Order 11246, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, Section 1981 of the Civil Rights Act of 1966, the Equal Pay Act of 1962, the Fair Labor Standards Act, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, the Family and Medical Leave Act of 1993, the Consolidated Omnibus Budget Reconciliation Act (COBRA), the Genetic Information Non-discrimination Act, the Sarbanes-Oxley Act, the Employee Polygraph Protection Act, the Uniformed Services Employment and Reemployment Rights Act of 1994, the Equal Pay Act, the Lilly Ledbetter Fair Pay Act, the Post-Civil War Civil Rights Act (42 U.S.C. §§1981-1988), or any other foreign, federal, state or local law or judicial decision), (v) claims arising under the Employee Retirement Income Security Act (excluding claims for amounts that are vested benefits or that Executive is otherwise entitled to receive under any employee benefit plan of the Company or any of its affiliates in accordance with the terms of such plan and applicable law), (vi) claims arising under or relating to any statute or common law of the State of New York, including but not limited to the New York State Human Rights Law, the New York Executive Law, the New York Civil Rights Law, the New York Minimum Wage Act and/or the New York Labor Law, and (vii) any other statutory or common law claims related to Executive's employment with the Company or the separation of Executive's employment with the Company.

Without limiting the foregoing Section, Executive represents that Executive understands that this Release specifically releases and waives any claims of age discrimination, known or unknown, that Executive may have against the Releasees as of the date Executive signs this Release. This Release specifically includes a waiver of rights and claims under the Age Discrimination in Employment Act of 1967, as amended, and the Older Workers Benefit Protection Act. Executive acknowledges that as of the date Executive signs this Release, Executive may have certain rights or claims under the Age Discrimination in Employment Act, 29 U.S.C. § 626 and Executive voluntarily relinquishes any such rights or claims by signing this Release.

However, this Release excludes, and Executive does not waive, release, or discharge (A) any right to file an administrative charge or complaint with, or testify, assist, or participate in an investigation, hearing, or proceeding conducted by, the Equal Employment Opportunity Commission, or other similar federal or state administrative agencies (although Executive waives any right to monetary relief related to any filed charge or administrative complaint); (B) any right to report allegations of unlawful conduct, including criminal conduct and unlawful employment practices, to federal, state, or local authorities; (C) any right to make claims under the New York Workers' Compensation Law, the New York Unemployment Insurance Law, any other claims that cannot be waived by law; (D) any rights as a director of Keeco, Inc. or as a direct or indirect shareholder of Keeco, Inc. or any affiliate thereof; (E) indemnification rights Executive has against the Company (including under any governing documents of the Company or its affiliates) or claims under D&O insurance; (F) any rights to vested benefits, such as pension or retirement benefits, the

rights to which are governed by the terms of the applicable plan documents and award agreements; and (G) any rights under the Separation Agreement.

5. **Covenant Not to Sue; Bar**. Executive, for himself and his heirs, personal representatives, assigns, successors, attorneys, and agents, agrees and covenants to forever refrain from instituting, procuring or prosecuting any lawsuit or other action against the Releasees relating to any claims, obligations, demands, causes of action, debts, disputes or controversies which have been or could have been raised arising out of or relating to Executive's employment with Company or Executive's separation from his employment with Company. Executive further acknowledges and agrees that if he should hereafter make any claim or demand or commence or threaten to commence any action, claim or proceeding against a Releasee with respect to any cause, matter or thing which is the subject of the releases under Section 4 of this Release, this Release may be raised as a complete bar to any such action, claim or proceeding, and the applicable Releasee may recover from Executive all costs incurred in connection with such action, claim or proceeding, including attorneys' fees.

6. **Right to Engage in Protected Activity**. Nothing in this Release is intended or shall be construed to interfere with Executive's right to file a charge with the Equal Employment Opportunity Commission ("EEOC") or any state or local human rights commission in connection with any claim for discrimination, harassment, retaliation or wrongful termination that Executive believes he may have against any of the Releasees. By executing this Release, however, Executive hereby waives his right to recover any remuneration, damages, compensation or relief of any type whatsoever from the Releasees in any proceeding that Executive may bring before the EEOC or any similar state or local commission, or in any proceeding brought on Executive's behalf by the EEOC or any similar state or local commission. Moreover, nothing in this Release prohibits Executive from discussing or disclosing allegations relating to sexual harassment or sexual assault, or from discussing terms and conditions of employment or otherwise engaging in activity protected by Section 7 of the National Labor Relations Act.

7. **Return of Property**. To the extent that Executive has not already done so, Executive agrees to promptly return to Company's designated representative, Rose Ruiz, Senior Vice President Human Resources, any Company property or documents in Executive's possession, including property or documents related to the operation of the business, uniforms, manuals, keys, cell phone, etc. obtained by Executive during Executive's employment with Company. Notwithstanding anything to the contrary in this Release, the Separation Agreement or the Employment Agreement, Executive and the Company hereby agree and acknowledge that Executive shall not be required to return to the Company a copy of Executive's contacts that were stored in Microsoft Outlook (or any other contact storage program) as of immediately prior to the Separation Date, and such information shall not constitute confidential information of the Company or any affiliate.

8. **Governing Law**. This Release shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflicts of laws principles. Any action or proceeding by either of the Parties to enforce this Release shall be brought only in a state or federal court located in New York City, New York. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

9. **Acknowledgments**. Executive further expressly acknowledges and agrees that: (a) this Release is part of an agreement between Executive and Company and it has been written so that Executive understands it; (b) this Release specifically refers to rights or claims under the ADEA; (c) in return for this Release, Executive will receive consideration beyond that which he was already entitled to receive before entering into this Release; (d) he is hereby advised in writing by this Release to consult with an attorney before signing this Release; (e) he was informed that he had a period of at least 21 days within which to consider this Release, and that changes (whether material or otherwise) to this Release will not restart the 21-day period; (f) he knowingly, freely, and voluntarily agrees to all of the terms and conditions set out in this Release including, without limitation, the waiver, release, and covenants contained in it; (g) nothing in this Release prevents or precludes Executive from challenging or seeking a determination in good faith of the validity of this waiver under the ADEA, nor does it impose any condition precedent, penalties or costs from doing so, unless specifically authorized by federal law; (h) he has a period of seven (7) days following the execution of this Release during which he may revoke this Release by delivering written notice to the Company in accordance with Section 5(e) of the Separation Agreement, and this Release shall not become effective or enforceable until such revocation period has expired; and (i) he understands that if he revokes this Release, it will be null and void in its entirety, and he will not be entitled to any payments or benefits provided in this Release, including without limitation those under Section 2 above.

10. **Miscellaneous**. This Release, together with the Separation Agreement, are the complete understanding between Executive and the Company in respect of the subject matter of this Release and supersedes all prior agreements relating to the same subject matter. Executive has not relied upon any representations, promises or agreements of any kind except those set forth herein in signing this Release. In the event that any provision of this Release should be held to be invalid or unenforceable, each and all of the other provisions of this Release shall remain in full force and effect. If any provision of this Release is found to be invalid or unenforceable, such provision shall be modified as necessary to permit this Release to be upheld and enforced to the maximum extent permitted by law.

11. **Counterparts**. This Release may be executed by the parties hereto in counterparts, which taken together shall be deemed one original.

(*Signatures are on the following page*)

IN WITNESS WHEREOF, the parties have caused this Release to be executed as of the date first written above.

                                    **KEECO, LLC**

                                    _____

                                    By:  Quinn Morgan
                                    Its:   Authorized Signatory

                                    **EXECUTIVE**


                                    _____

                                    Chris Grassi

IN WITNESS WHEREOF, the parties have caused this Release to be executed as of the date first written above.

**KEECO, LLC**

_____
By: Quinn Morgan
Its: Authorized Signatory

**EXECUTIVE**

*DocuSigned by:*
*Chris Grassi*
9540CCFE19AA4FD...
Chris Grassi

5